### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CODY MCBEATH, | : |
| | : Case No. _____ |
| Plaintiff, | : |
| | : JURY TRIAL DEMANDED |
| v. | : |
| | : **COMPLAINT FOR VIOLATION OF THE** |
| AKERS BIOSCIENCES, INC., | : **SECURITIES EXCHANGE ACT OF 1934** |
| CHRISTOPHER C. SCHREIBER, JOSHUA | : |
| SILVERMAN, BILL J. WHITE, ROBERT | : |
| SCHROEDER, MYMD | : |
| PHARMACEUTICALS, INC., and XYZ | : |
| MERGER SUB INC., | : |
| | : |
| Defendants. | : |

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges the following upon personal knowledge with respect to himself, and upon information and belief based upon the investigation of counsel as to all other allegations herein:

### NATURE OF ACTION

1. On November 11, 2020, Akers Biosciences, Inc. ("Akers" or the "Company") entered into an agreement (the "Merger Agreement") to merge with MyMD Pharmaceuticals, Inc. ("MyMD") and XYZ Merger Sub, Inc. ("Merger Sub") (the "Proposed Merger").

2. Under the terms of the Merger Agreement, Akers will issue shares of common stock to MyMD's stockholders.

3. On January 15, 2021, defendants filed a registration statement (the "S-4") with the U.S. Securities and Exchange Commission (the "SEC").

4. As alleged herein, the S-4 fails to disclose material information regarding the Proposed Merger, and defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").

**JURISDICTION AND VENUE**

5.   This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the Exchange Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.

6.   This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.   Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

**THE PARTIES**

8.   Plaintiff is and has been continuously throughout all relevant times the owner of Akers common stock.

9.   Defendant Akers is a New Jersey corporation.  Akers' common stock is traded on the NASDAQ under the ticker symbol "AKER."

10.   Defendant Christopher C. Schreiber is Chairman of the Board of Directors of Akers (the "Board").

11.   Defendant Joshua Silverman is a member of the Board.

12.   Defendant Bill J. White is a member of the Board.

13.   Defendant Robert Schroeder is a member of the Board.

14.   Defendants identified in ¶¶ 10-13 are referred to herein as the "Individual Defendants."

15.   Defendant MyMD is a Florida corporation.

16. Defendant Merger Sub is a Florida corporation.

## SUBSTANTIVE ALLEGATIONS

17. On November 11, 2020, Akers entered into the Merger Agreement, under which Akers will issue shares of common stock to MyMD's stockholders.

18. The press release announcing the Proposed Merger provides as follows:

MyMD Pharmaceuticals, Inc. ("MyMD") and Akers Biosciences, Inc. ("Akers") (NASDAQ: AKER) today jointly announced that they have entered into a definitive merger agreement. Upon closing the transaction, the combined company is expected to be renamed MyMD Pharmaceuticals, Inc. and remain listed on the Nasdaq under the new ticker symbol "MYMD." []

Following the merger, the two companies will join as one to focus on developing and commercializing MyMD's novel immunotherapy pipeline assets, including MYMD-1, a first-in-class drug being developed to treat autoimmune and age-related diseases, including extending the human lifespan. MYMD-1 has been shown to be effective in regulating the immune system from causing age-related diseases in preclinical studies and MyMD believes that it is the first oral small molecule regulator of tumor necrosis factor alpha (TNF-α) capable of crossing the blood-brain barrier. Looking forward, MyMD intends to also continue to develop its second asset, SUPERA-1R, a drug platform based on a patent-protected, synthetic derivative of cannabidiol (CBD) that seeks to target key cannabinoid receptors. []

**Management Organization**

The combined company will be led by Chris Chapman, M.D., who will become President and Chief Medical Officer of MyMD, and Adam Kaplin, M.D., who will become Chief Scientific Officer of MyMD, and is planned to be headquartered in Baltimore, Maryland. Dr. Chapman is the founder and CEO of Chapman Pharmaceutical Consulting Inc. and will bring extensive experience working with biotechnology companies in the design of clinical trial protocols, conducting clinical trials and advising on regulatory and medical affairs. Dr. Kaplin, the prior founder and chief of the Neuropsychiatric CNS Autoimmune Consultation Clinic, at the Johns Hopkins Multiple Sclerosis Center of Excellence, and an assistant professor of psychiatry and behavioral sciences at the Johns Hopkins University School of Medicine, has consulted with multiple hospitals, biotechnology companies and non-profit organizations on medical and development matters.

**Transaction Details**

On a pro forma basis and based upon the number of shares of Akers common stock

to be issued in the merger, current Akers' shareholders will own approximately 20% of the combined company, on a fully diluted basis, and current MyMD's shareholders will own approximately 80% of the combined company on a fully diluted basis (excluding the effect of warrants issued in the below described private placement). The merger agreement also provides for additional contingent payments in cash and shares to the stockholders of MyMD under certain circumstances. The merger is expected to close in the first half of 2021, subject to the approval of Akers' shareholders at a special shareholder meeting, as well as other customary closing conditions.

In connection with the definitive merger agreement, Akers agreed to loan MyMD up to $3 million pursuant to a secured promissory note. The note bears interest at 5% per annum, has a maturity date of April 15, 2022 and is secured by a first lien on MyMD's assets.

**Private Placement**

Concurrently with the execution of the merger agreement with MyMD, Akers entered into a securities purchase agreement with certain accredited investors to raise $18 million through the issuance of up to 9,765,933 shares of common stock (or common stock equivalents) and accompanying warrants to purchase an aggregate of up to 9,765,933 shares of common stock at $1.85 per share of common stock and accompanying warrant. The warrants are immediately exercisable at an exercise price of $2.06 per share, with an expiration date of five and one-half years after the date of issuance. The offer and sale of the foregoing securities are being made in a transaction not involving a public offering and have not been registered under the Securities Act of 1933, as amended (the "Securities Act"), or applicable state securities laws.

Accordingly, the securities may not be reoffered or resold in the United States except pursuant to an effective registration statement or an applicable exemption from the registration requirements of the Securities Act and such applicable state securities laws.

Under an agreement with the investors, the Company is required to file a registration statement with the Securities and Exchange Commission covering the resale of the shares of common stock to be issued to the investors and to use best efforts to have the registration statement declared effective as promptly as practical thereafter.

The closing of the private placement is subject to the satisfaction of certain customary closing conditions set forth in the securities purchase agreement.

19.    On January 15, 2021, defendants filed the S-4, which fails to disclose material information regarding the Proposed Merger.

### Financial Analyses

20. The S-4 fails to disclose material information regarding the financial analyses performed by Gemini Valuation Services, LLC ("Gemini"), Akers' financial advisor. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion and the key inputs and range of ultimate values generated by those analyses must be fairly disclosed.

21. The S-4 fails to disclose the following regarding Gemini's Guideline Transaction Analysis: the closing dates of the transactions.

22. The S-4 fails to disclose the following regarding Gemini's Akers Valuation Analysis: (i) the transactions and companies observed; and (ii) the basis for selecting the transactions and companies.

23. The Registration fails to disclose the following regarding Gemini's Relative Valuation Analysis: pro forma net cash.

### Financial Projections

24. The S-4 fails to disclose Akers' and MyMD's financial projections. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by a company's financial advisor in support of its fairness opinion.

### Background of the Proposed Merger and Potential Conflicts of Interest

25. The S-4 fails to disclose whether Akers entered into any non-disclosure agreements that contained standstill or don't ask, don't waive provisions.

26. The S-4 fails to disclose the terms of Palladium Capital Advisors, LLC's ("Palladium") and Biologics Consulting Group, Inc.'s ("Biologics") engagements. Specifically, defendants must disclose: (i) the fees Palladium and Biologics have received or will receive; (ii) the amount of Palladium's and Biologics' fee that is contingent on the closing of the Proposed Merger; (iii) whether Palladium and Biologics have performed prior services for any parties to the Merger Agreement; and (iv) if so, the timing and nature of the services and the fees received by Palladium and Biologics.

27. The S-4 fails to disclose the timing and nature of any communications regarding the future employment and directorship of Akers' officers and directors.

28. If disclosed, the omitted information would significantly alter the total mix of information available to Akers' stockholders.

### COUNT I

**Claim Against the Individual Defendants and Akers for Violation of Section 14(a) of the Exchange Act and Rule 14a-9**

29. Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

30. The Individual Defendants disseminated the false and misleading S-4, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in light of the circumstances under which they were made, failed to state material facts necessary to make the statements therein not materially false or misleading.

31. Akers is liable as the issuer of these statements.

32. The S-4 was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the S-4.

33. The Individual Defendants were at least negligent in filing the S-4 with these materially false and misleading statements.

34. The omissions and false and misleading statements in the S-4 are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Merger.

35. A reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the S-4 and in other information reasonably available to stockholders.

36. The S-4 is an essential link in causing plaintiff to approve the Proposed Merger.

37. Accordingly, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9.

38. Plaintiff is threatened with irreparable harm.

## COUNT II

**Claim Against the Individual Defendants and MyMD for Violation of Section 20(a) of the Exchange Act**

39. Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

40. The Individual Defendants and MyMD acted as controlling persons of Akers within the meaning of Section 20(a) of the Exchange Act as alleged herein.

41. Due to their positions as officers and/or directors of Akers and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the S-4, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

42. Each of the Individual Defendants and MyMD was provided with or had unlimited access to copies of the S-4 alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

43. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.

44. The S-4 contains the unanimous recommendation of the Individual Defendants to approve the Proposed Merger. They were thus directly involved in the making of the S-4.

45. MyMD also had supervisory control over the composition of the S-4 and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the S-4.

46. Accordingly, the Individual Defendants and MyMD violated Section 20(a) of the Exchange Act.

47. The Individual Defendants and MyMD had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.

48. These defendants are liable pursuant to Section 20(a) of the Exchange Act.

49. Plaintiff is threatened with irreparable harm.

**PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief against defendants as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from consummating the Proposed Merger;

B. In the event defendants consummate the Proposed Merger, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a S-4 that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Dated: March 10, 2021

**GRABAR LAW OFFICE**

By: _____
Joshua H. Grabar (#82525)
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
267-507-6085
jgrabar@grabarlaw.com

*Counsel for Plaintiff*